IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-03417-LTB

AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation,

  Plaintiff,

v.

SUMMIT PARK TOWNHOME ASSOCIATION, a Colorado corporation,

  Defendant.
_____

# MEMORANDUM OPINION AND ORDER
_____

**Babcock, J.**

  This insurance coverage dispute is before me on Defendant Summit Park Townhome Association's ("Summit Park") Motion to Stay Litigation and Motion to Compel Appraisal as Mandated Under the Policy [Doc. # 7]. Plaintiff Auto-Owners Insurance Company ("Auto-Owners") issued an insurance policy to Summit Park. Summit Park now requests that the Court compel Auto-Owners' participation in the appraisal process outlined in the policy in order to determine the "amount of loss" it sustained as a result of a September 2013 hailstorm; stay the litigation pending completion of that process; and reserve jurisdiction to select an umpire.

  I have reviewed the motion, Auto-Owners' response [Doc. # 10], and the reply [Doc. # 16]. Oral argument would not materially assist me in deciding the motion. As explained below, I **GRANT** the motion because the policy unambiguously commits the parties' dispute regarding the amount of loss from the storm, if any, to the appraisal process. Staying further

court proceedings while this process takes place is the most efficient way to proceed for both the parties and the Court.

## I. Background

The following facts are undisputed unless otherwise noted. Auto-Owners issued policy number 74416480-13 to Summit Park, a homeowner's association for a community of 57 townhomes in Aurora, Colorado. 2d Am. Compl. ¶¶ 2-3 [Doc. # 6]. The policy has a term of March 1, 2013, to March 1, 2014, and covers, among other things, "direct physical loss of or damage to" the Summit Park premises. *Id.* ¶¶ 3-4. In September 2013, a hailstorm moved through Aurora. *Id.* ¶ 5. Summit Park made a claim under the policy for damages resulting from the storm. *Id.* Auto-Owners investigated the claim and paid Summit Park some $245,000. Mot. ¶¶ 6, 11 [Doc. # 7].

Summit Park believes the covered damages are millions of dollars greater and hired counsel to press its cause with Auto-Owners. *Id.* ¶ 9. Summit Park also sought to exercise its rights under the policy's appraisal provision. *Id.* ¶ 21. That provision allows either party to "make written demand for an appraisal of the loss" if the parties "disagree on the value of the property or the amount of loss." Ex. A to 2d Am. Compl. at 78 [Doc. # 6-1]. Once a party does so, each party "will select a competent and impartial appraiser" to decide the issue. *Id.* The appraisers then choose an umpire to whom "they will submit their differences," if any, and a "decision agreed to by any two will be binding." *Id.* A "judge of a court having jurisdiction" will choose the umpire if the appraisers cannot agree on a selection. *Id.*

Auto-Owners eventually filed this declaratory judgment action in response to these demands. As relevant here, Auto-Owners alleges that the policy does not cover Summit Park's

2

claimed damages, in whole or in part, because they were either caused by a storm predating the policy's effective dates—rather than by the September 2013 storm—or by some cause of loss not covered under the policy, such as defective workmanship. *See* 2d Am. Compl. ¶¶ 61-71 [Doc. # 6]. Auto-Owners further alleges that, to the extent the September 2013 storm did cause damage, the policy does not provide coverage for replacement of undamaged property, including vinyl siding, to achieve "matching" or "visual consistency" with damaged property that is replaced. *Id.* ¶¶ 72-78.

The instant motion requires me to decide whether these are "disagree[ments] on the value of the property or the amount of loss" such that Summit Park may invoke the appraisal provision. Ex. A to 2d Am. Compl. at 78 [Doc. # 6-1]. If I conclude that they are, I must then decide whether it is appropriate to stay the litigation while the appraisal process is completed.

## II. Analysis

The Court's jurisdiction in this matter is founded on diversity of citizenship. 28 U.S.C. §1332(a). Therefore, I apply the substantive law of Colorado. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). Under Colorado law, questions of coverage under an insurance policy are generally matters of law reserved for the court. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998). The policy must be enforced as written unless the policy contains an ambiguity. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). The policy should be construed to give effect to the intent of the parties. *Id.* "Whenever possible this intent should be ascertained from the plain language of the policy alone." *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 72 (Colo. App. 2010). "[W]ords should

be given their plain meaning according to common usage, and strained constructions should be avoided." *Compton v. State Farm Mut. Auto. Ins. Co.*, 870 P.2d 545, 547 (Colo. App. 1993).

Auto-Owners contends that the appraisal process has no role to play in this case, at least at this juncture. In committing disputes about the "amount of loss" to the appraisal process, Auto-Owners contends, the policy does not allow appraisers to determine the cause of any loss. Rather, this is a question of coverage that only the Court can resolve. Therefore, it contends, appraisers cannot decide how much, if any, of the damage to Summit Park's property was caused by the September 2013 storm, as opposed to events predating the policy or excluded causes like defective workmanship. And they certainly cannot decide the parties' other dispute, about whether the policy will pay to replace undamaged property. I address these issues in turn.

## A.  Whether the Appraisal Process May Determine Issues of Causation

Courts across the country are divided as to whether, in determining the "amount of loss" pursuant to appraisal provisions like the one here, appraisers may consider questions of causation. For example, with respect to an appraisal provision in a homeowner's insurance policy, one court has held that "assessment of the amount of a loss . . . necessarily includes determinations" such as whether damage "was caused by a covered peril or a cause not covered, such as normal wear and tear, dry rot, or various other designated, excluded causes." *State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1288 (Fla. 1996); *see also, e.g., North Glenn Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 854 N.W.2d 67, 71 (Ia. App. 2014) ("Causation is an integral part of the definition of loss, without consideration of which the appraisers cannot perform their assigned function."). By contrast, other courts have held that "determination of the causation of [damages] is within the exclusive purview of the courts, not

the appraisers." *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007); *see also, e.g., Munn v. Nat'l Fire Ins. Co. of Hartford*, 115 So. 2d 54, 55 (Miss. 1959) ("We have concluded that the appraisers have no power to determine the cause of the damage.").

The parties have identified no Colorado appellate authority on this question, and the Court has located none. Summit Park, however, has attached to its motion three orders from Colorado trial courts holding that appraisals may address causation. *See* Order Re: Pl.'s Mot. to Compel Appraisal/Arbitration, *Rooftop Roofing, Inc. v. Fire Ins. Exch.*, No. 10CV243 (Elbert Cnty., Colo. Dist. Ct. Apr. 8, 2011) [Doc. # 7-9]; Order Re: Pl.'s Mot. to Compel Appraisal and for Attorney's Fees, *Ikeako v. Fire Ins. Exch.*, No. 12CV2127 (Arapahoe Cnty., Colo. Dist. Ct. Apr. 19, 2013) [Doc. # 7-10]; Order on Scope of Appraisal, *Cochran v. Auto-Owners Ins. Co.*, No. 11CV8434 (Denver Cnty., Colo. Dist. Ct. Oct. 22, 2012) [Doc. # 7-11]. Auto-Owners has not objected to the Court's consideration of these orders. I take judicial notice of them. Fed. R. Evid. 201(b), (c)(1).

I agree with the decisions allowing appraisers to address issues of causation, and conclude that the policy unambiguously permits Summit Park to demand an appraisal under the circumstances here. I reach this conclusion for several reasons. First, while the policy does not define the term, the plain meaning of "amount of loss" incorporates the concept of causation. *See CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F. Supp. 2d 259, 264 (D. Del. 2000) (quoting *Black's Law Dictionary* definition of "amount of loss": "the diminution, destruction, or defeat of the value of, or of the charge upon, the insured subject to the assured, *by the direct consequence of the operation of the risk insured against*, according to its value in the policy, or in contribution for loss, so far as its value is covered by the insurance") (emphasis in original).

The facts here further illustrate this point. In its reservation of rights letter, Auto-Owners noted that, in determining the "actual cash value" of the damage, it determined that certain furnace flue stacks had sustained "heavy damage" that was "not consistent with the 2013 storm" but was instead "due to the 2000 hailstorm." Ex. 1 to Resp. at 9 [Doc. # 10-1]. This demonstrates that, as a matter of common usage, one determines the amount of loss with reference to a particular cause. *See also State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 893 (Tex. 2009) ("Indeed, appraisers must always consider causation, at least as an initial matter. An appraisal is for damages caused by a specific occurrence, not every repair a home might need. . . . Any appraisal necessarily includes some causation element, because setting the "amount of loss" requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else.").

Second, interpretation of a policy provision "requires consideration of the purpose of the provision." *Pompa v. Am. Family Mut. Ins. Co.,* 520 F.3d 1139, 1143 (10th Cir. 2008) (citing *Branscum v. Am. Cmty. Mut. Ins. Co.,* 984 P.2d 675, 678 (Colo. App. 1999)). A purpose of appraisal provisions is to avoid litigation and encourage settlement. *Didimoi*, 110 F. Supp. 2d at 269 (noting that if the court did not allow appraisers to consider causation, it "would be reserving a plethora of detailed damage assessments for judicial review, thereby debunking the purpose of appraisal which is to minimize the need for judicial intervention"); 46A C.J.S. Insurance § 1889 (2015) ("The purpose of a provision for arbitration in an insurance policy is to provide a plain, speedy, inexpensive and just determination of the extent of the loss."). Declining to allow appraisers to consider causation would significantly undermine this purpose. *Johnson*, 290 S.W.3d at 892-93 ("If State Farm is correct that appraisers can never allocate

damages between covered and excluded perils, then appraisals can never assess hail damage unless a roof is brand new. That would render appraisal clauses largely inoperative, a construction we must avoid.").

Third, Colorado public policy cautions against an overly restrictive reading of the appraisal provision. An appraisal process like the one provided by the policy here has been "classified as an arbitration" pursuant to the Colorado Uniform Arbitration Act, Colo. Rev. Stat. § 13-22-201, *et seq.* ("CUAA"), by at least one judge. *See Lim v. American Econ. Ins. Co.*, No. 13-CV-02063-CMA-KLM, 2014 WL 1464400, at *4 (D. Colo. Apr. 14, 2014). Colorado has a "strong public policy in favor of arbitration." *Braata, Inc. v. Oneida Cold Storage Co., LLP*, 251 P.3d 584, 590 (Colo. App. 2010). For example, the CUAA allows courts to stay arbitration proceedings only in limited circumstances, such as where "it is apparent from the language of the contract that the claim sought to be arbitrated is clearly beyond the scope of the arbitration clause." *Sopko v. Clear Channel Satellite Servs., Inc.*, 151 P.3d 663, 666 (Colo. App. 2006); *see also* 15 Couch on Ins. § 209:8 (3d ed. 2014) ("Like the arbitration remedy, appraisal is designed to be consistent with the public policy of discouraging litigation. Accordingly, every reasonable presumption will support the validity of a loss appraisal."). Although I do not address at this juncture the applicability of the CUAA to this case, at a minimum the CUAA demonstrates a strong public policy in favor of alternative dispute resolution processes like appraisal.

Fourth, and most importantly, in determining what damage, if any, was caused by the September 2013 storm, the appraisers will not be making, and will not preclude the Court from making, coverage determinations. *Didimoi*, 110 F. Supp. 2d at 263-65 ("[T]he question of 'coverage' deals with whether an event, such as a fire, is covered in the first instance, while the

question of amount of loss relates to what damage was done by the covered event and the cost to repair that damage."). The parties may still dispute coverage issues after the appraisal process has bene completed. *Id.* at 265. Auto-Owners is concerned that the Court will be precluded from "review[ing] the merits of the appraiser's award" because the CUAA provides that arbitration awards are binding on courts in most circumstances. Resp. at 23 [Doc. # 10]; Colo. Rev. Stat. § 12-22-223. Auto-Owners is, of course, correct with regard to the appraisers' factual determinations regarding the issues over which the policy gives them purview—the "value of the property or the amount of loss"—including the amount of damage, if any, caused by the September 2013 storm. *Didimoi*, 110 F. Supp. 2d at 259 (parties "may not contest the decision on amount of loss reached by the umpire and at least one of the appraisers as a result of the appraisal process"). Whether because of the CUAA, the policy language, or both, the Court's review of these issues will be limited. But legal determinations, including regarding coverage, are clearly outside the scope of the appraisal process. *See, e.g.,* Colo. Rev. Stat. § 13-22-223(1) (requiring court to vacate arbitration award upon finding that "arbitrator exceeded the arbitrator's powers"); 15 Couch on Ins. § 209:8 (3d ed. 2014) ("In an appraisal, the parties refer some ministerial duty or some matter involving only the ascertainment of *facts* to selected persons for disposition.") (emphasis added). For the same reasons, Auto-Owners' concern that appraisal could somehow shift the parties' burden of proof, a legal issue, is also misplaced.

**B. Whether the Appraisal Process May Determine Coverage as to Undamaged Property**

Summit Park contends the appraisal process may determine whether the policy requires Auto-Owners to pay to replace undamaged property in order to achieve visual consistency. I disagree. This is a clear example of a coverage issue beyond the scope of appraisal. *Didimoi*,

110 F. Supp. 2d at 268 ("Coverage questions . . . are legal questions for the Court as this case progresses."). The main case on which Summit Park relies actually illustrates this point. *See* Reply at 20 [Doc. # 16] (citing *Cedar Bluff Townhome Condo Ass'n, Inc. v. Am. Family Mut. Ins. Co.*, 857 N.W.2d 290, 293 (Minn. 2014)). While *Cedar Bluff* affirmed an appraisal panel's conclusion that an insurance policy covered replacement of undamaged property to achieve matching, it reviewed that conclusion *de novo*, giving it no deference. *Id.* The court wrote that "[a]n appraiser can make no legal determinations" and that "an appraisal panel may not construe the insurance policy." *Id.* (internal citations and quotations omitted). I would review any legal conclusions the appraisers should happen to make in the same fashion.

**C.  Scope of Appraisal**

While the appraisers should not themselves resolve the parties' legal issues, they should make appropriate factual conclusions to enable the Court to do so. For example, the appraisals should address the cost of replacing undamaged property to achieve matching. *See Cochran, supra*, at 9 (noting that "the Appraisal shall include all items of damage claimed by the [insureds]"). The appraisals should separately calculate and identify disputed costs so that the Court can either include or exclude them once it has determined whether the policy provides coverage for them. Counsel should work collaboratively to ensure that the appraisals provide sufficient detail to enable the Court to do this. Following this course will enable the parties to avoid unnecessary discovery or additional appraisals.

**D.  Stay of Litigation**

As a final matter, I must decide whether to grant a stay of proceedings while the appraisal process takes place. A court may enter a stay of proceedings incidental to its inherent power to

9

"control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 14–cv–02199–CMA–KMT, 2014 WL 7005106, at *1 (D. Colo. Dec. 9, 2014) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)).  In this District, we have frequently considered the following factors in determining whether a stay is appropriate: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *Id.* (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).

With respect to the first three factors, it is most efficient for the parties and the Court to wait until the appraisal process is complete before proceeding with discovery and other matters. The appraisal process should resolve key factual issues that are in dispute.  In particular, if, as Auto-Owners alleges, the September 2013 storm caused no damage to Summit Park's property, 2d Am. Compl. ¶¶ 61-65 [Doc. # 6], then it appears there is no coverage and no reason for this case to proceed.  If that storm did cause damage, appraisal will resolve the extent of that damage. Accordingly, appraisal could limit the need for discovery in this case, resulting in significant cost savings to both parties.  I give little weight to the fourth and fifth factors, as I am not aware of any significant interests of non-parties or the public that a stay would impact, either positively or negatively.  On balance, therefore, I conclude that a stay is appropriate.

### III. Conclusion

Accordingly, it is **ORDERED** that:

1. Defendant's Motion to Stay Litigation and Motion to Compel Appraisal as Mandated Under the Policy [Doc. # 7] is **GRANTED**;

2. The parties shall promptly and fully participate in the appraisal process, including by identifying their preferred appraisers in accordance with the appraisal provision on or before April 28, 2015;

3. Further proceedings in this matter are **STAYED** pending completion of the appraisal process; and

4. The Court **RESERVES** jurisdiction during the stay period to resolve any intractable disputes regarding the appraisal process that may arise and to select an umpire if the appraisers selected by the parties cannot agree on one.

DATED: April __14__, 2015, at Denver, Colorado.

                BY THE COURT:

                  s/Lewis T. Babcock  
                LEWIS T. BABCOCK, JUDGE