IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-03417-LTB

AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation,

  Plaintiff,

v.

SUMMIT PARK TOWNHOME ASSOCIATION, a Colorado corporation,

  Defendant.
_____

**MEMORANDUM OPINION AND ORDER**
_____

**Babcock, J.**

  This declaratory judgment action is before me on Plaintiff Auto-Owners Insurance Company's ("Auto-Owners") Opposed Motion to Compel Appraisal Agreement [Doc. # 18], in which Auto-Owners seeks to compel Defendant Summit Park Townhome Association ("Summit Park") to enter into an agreement governing the appraisal process in this case. I have reviewed the motion, Summit Park's response [Doc. # 22], and Auto-Owners' reply [Doc. # 23]. Oral argument would not materially assist me in deciding the motion. As I explain below, I **GRANT IN PART AND DENY IN PART** the motion and order that the appraisal process be conducted pursuant to the terms set forth herein.

### I. Background

  The background to this dispute is more fully described in my order of April 14, 2015. *See* Mem. Op. & Order [Doc. # 17]; --- F. Supp. 3d ---, 2015 WL 1740818. Briefly, Auto-Owners issued an insurance policy to Summit Park, a townhome community, covering, *inter*

*alia*, "direct physical loss of or damage to" the Summit Park premises.  2d Am. Compl. ¶¶ 3-4 [Doc. # 6].  The policy has a term of March 1, 2013, to March 1, 2014.  *Id.* ¶ 3.  At issue is the amount of money, if any, Summit Park is entitled to recover under the policy for damage it alleges was caused by a September 2013 hailstorm.  Auto-Owners contends that some or all of the claimed damage was caused by a storm predating the policy's inception or by a cause of loss excluded under the policy, such as defective workmanship.  *Id.* ¶¶ 61-71.  On Summit Park's motion, I ordered the parties to engage in the policy's appraisal process to determine the amount of loss, if any, caused by the September 2013 storm.  *See* Doc. # 17.  The appraisal process is set forth in the policy as follows:

> **Appraisal.**  If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:  **a.**  Pay its chosen appraiser; and  **b.**  Bear the other expenses of the appraisal and umpire equally.  If there is an appraisal, we will still retain our right to deny the claim.

Ex. A to 2d Am. Compl. at 78 [Doc. # 6-1].  I did not provide guidelines for how the appraisal process should proceed except to note that the appraisals should "provide sufficient detail" regarding disputed costs.  Doc. # 17 at 9.  As an example, I noted that the parties dispute whether the policy covers the cost of replacing undamaged property to achieve matching.  *Id.*  I explained that "counsel should work collaboratively" to ensure that the appraisals address the cost of undertaking such replacements, as well as any other disputed costs, so that discovery or additional appraisals could be avoided once the Court decides whether the costs are covered

2

under the policy. *Id.* I stayed further court proceedings pending completion of the appraisal process but "reserve[d] jurisdiction . . . to resolve any intractable disputes regarding the appraisal process that may arise." *Id.*

The parties are now at an impasse regarding how the appraisal process should proceed. Auto-Owners has proposed a written agreement to govern the process. The proposed agreement sets forth, for example, procedures to govern the parties' communications with the appraisers and umpire. Ex. A to Mot. at 6-7 [Doc. # 18-1]. It also lists specific items to be addressed by the appraisals. *Id.* Auto-Owners argues that the appraisal procedure is a form of arbitration and, therefore, is governed by the Colorado Uniform Arbitration Act, Colo. Rev. Stat. § 13-22-201, *et seq.* ("CUAA"). It argues that the procedures in the proposed agreement are based on the CUAA and that, even if the CUAA does not apply, the procedures would help to ensure "due process and fair notice" and are further supported by the policy language requiring the appraisers to be "competent and impartial."

Summit Park refuses to enter into the agreement. It argues that the CUAA does not apply to the appraisal process and that there is no other basis—in the policy or elsewhere—to order that the appraisals be conducted in a certain manner. Summit Park also takes issue with specific provisions of the proposed agreement: It argues, for example, that the agreement's provisions relating to disclosure of potential conflicts of interest by the appraisers and umpire are unduly burdensome and that the provisions regarding discovery, subpoenas, and other formalities would result in a quasi-judicial proceeding and undermine the appraisal provision's purpose of determining the amount of loss informally and expeditiously.

## II. Analysis

### A. The Policy's Appraisal Process Is Not an Arbitration Under the CUAA

The Court's jurisdiction in this matter is founded on diversity of citizenship. 28 U.S.C. §1332(a). Therefore, while I apply federal procedural law, I apply the substantive law of Colorado. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996). Under Colorado law, interpretation of the terms of an insurance policy is a question of law reserved for the court. *See Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 340 (Colo. 2004).

The CUAA sets forth numerous procedures that govern "an agreement to arbitrate." Colo. Rev. Stat. § 13-22-203. By way of example, it specifies certain disclosures that arbitrators must make in regard to potential conflicts of interest. *Id.* § 13-22-212. The statute, however, does not define "agreement to arbitrate." It appears that neither the Colorado appellate courts nor the Tenth Circuit have decided whether an appraisal process can constitute arbitration under the CUAA. While I previously noted that "the CUAA demonstrates a strong public policy in favor of alternative dispute resolution processes," I specifically "[did] not address . . . the applicability of the CUAA to this case." Doc. # 17 at 7. It is now necessary to do so to resolve Auto-Owners' contention that the CUAA should govern the appraisal process here.

The Tenth Circuit has held that an appraisal process did not constitute an arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, which, like the CUAA, does not define the term. *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,* 390 F.3d 684 (10th Cir. 2004). Neither party contends that the Federal Arbitration Act applies here, but the opinion is instructive. The case involved an option contract for the purchase of a newspaper. The

contract fixed the option's exercise price at the fair market value of the newspaper's assets. *Id.* at 686-87. In the event the parties could not agree on the fair market value, the contract provided that each side was to appoint an appraiser to assess it. *Id.* at 687. If the assessments of the parties' appraisers differed from each other by more than 10 percent, the parties "would jointly select a third appraiser and the exercise price would equal the average of the two closest appraisal values reported by the three appraisers." *Id.*

In concluding that there was no arbitration agreement, the court noted that "[c]entral to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute . . . 'through to completion.'" *Id.* at 689-90 (quoting *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 350 (3d Cir. 1997)). The court noted that, even if "the contract states that the third party's decision is final and binding, courts must nonetheless scrutinize the process created by the parties to ascertain whether the third party's decision does in fact resolve the dispute." *Salt Lake Tribune*, 390 F.3d at 690. Because the third appraisal would not be used at all if the first two appraisals were closest in value, the third appraisal "would hardly settle the parties' dispute" and, therefore, "standing alone, does not constitute an arbitration." *Id.* The court also rejected the argument that the "entire process" was an arbitration, explaining that "the three-appraisal process does not resemble classic arbitration" and that "to the extent there existed a dispute requiring arbitration, the [first two appraisers] produced the dispute by affixing values more than ten percent apart." *Id.*

While not controlling, I find *Salt Lake Tribune* highly persuasive and conclude that the appraisal process set forth in the policy is not an arbitration under the CUAA. For one, the process here, under which a decision must be "agreed to by any two [of the appraisers and the

umpire]" will not settle the parties' disagreement over the amount of the loss if no two can agree. *See Enzor v. N. Carolina Farm Bureau Mut. Ins. Co.*, 473 S.E.2d 638, 640 (N.C. App. 1996) (holding that appraisal award signed only by umpire was invalid because "umpire's signature alone fails to demonstrate that at least one other appraiser concurred in the award" and that, on remand, the case would need to "be submitted to the court for resolution by trial or otherwise" if an appraiser's signature could not be obtained). Even assuming the more likely scenario that two do agree, the parties' dispute will not be settled through to completion because there will still be legal issues for the Court to resolve. As one court has noted, "appraisal establishes only the amount of a loss and not liability for the loss under the insurance contract," whereas "arbitration is a quasi-judicial proceeding that ordinarily will decide the entire controversy." *Minot Town & Country v. Fireman's Fund Ins. Co.*, 587 N.W.2d 189, 190 (N.D. 1998); *see also Portland Gen. Elec. Co. v. U.S. Bank Trust Nat. Ass'n as Tr. for Trust No. 1*, 218 F.3d 1085, 1090 (9th Cir. 2000) (noting that, while "arbitration agreements permit arbitrators to resolve pending disputes between the parties and to determine ultimate liability, generally through adversary hearings at which evidence is admitted and the arbitrator plays a quasi-judicial role," appraisal agreements provide for the "submission of isolated issues to an appraiser" and do not "usurp the judiciary's power to resolve the case as a whole"); *St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748, 758 (E.D. La. 2010).

Indeed, the appraisal provision reserves to Auto-Owners its "right to deny the claim," likely in recognition of the fact that, whatever the amount of the loss, other parts of the policy or applicable law could limit coverage or preclude it altogether. As Judge Matsch of this Court noted in regard to a similar provision, while "the appraisal clause in this case says it's binding, it

also says if there is an appraisal . . . we'll still retain our right to deny the claim[,] which is a pretty important proviso." *See* Hr'g Tr. at 6 [Doc. # 43], *KCOM, Inc. v. Employers Mut. Cas. Ins. Co.*, No. 14-cv-01854-RPM (D. Colo. June 16, 2015), *appeal docketed*, No. 15-1218 (10th Cir. June 24, 2015). He added that, while appraisal could "give figures for the value of the property," it would resolve only "a part of the overall dispute" between the parties; it would not resolve other issues, like whether the policy provided coverage for complete replacement of a particular roof. *Id.* at 6-7. Accordingly, relying on *Salt Lake Tribune*, he concluded that "[a]ppraisal is not arbitration under the Colorado [Uniform] Arbitration Act." *See id*; Minute Entry [Doc. # 36], No. 14-cv-01854-RPM; *but see Lim v. Am. Econ. Ins. Co.*, No. 13-CV-02063-CMA-KLM, 2014 WL 1464400, at *3 (D. Colo. Apr. 14, 2014) (holding that appraisal is arbitration under CUAA because, even though appraisal does not "decide every dispute between" the parties, they are "bound . . . as to the amount of the loss").

      The parties here have already raised various legal issues that are likely to affect any damages Summit Park is ultimately awarded. For example, if I determine that the policy does not provide coverage for replacement of undamaged property to achieve matching—a disputed issue—Summit Park's damages will likely be lower than if I make the opposite determination. Further, Summit Park has suggested that it may assert a claim for bad faith breach of an insurance contract; it may seek to obtain additional damages and discovery in relation to such a claim. So while appraisal is likely to produce certain binding factual determinations, it likely will not resolve this case "through to completion." *Salt Lake Tribune*, 390 F.3d at 689 (internal quotations and citation omitted).

      Certain provisions of the CUAA are simply inapposite in the appraisal context. For

example, the CUAA provides that an "arbitrator may issue a subpoena for the attendance of a witness and for the production of records and other evidence at any hearing and may administer oaths." Colo. Rev. Stat. § 13-22-217(1). Further, an arbitrator "may permit such discovery as the arbitrator decides is appropriate in the circumstances." *Id.* § 13-22-217(3). If applied to appraisals, such provisions would transform a process that has traditionally been informal into a quasi-judicial proceeding. *See Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1062 (5th Cir. 1990) ("Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings."); *McDonnell v. State Farm Mut. Auto. Ins. Co.,* 299 P.3d 715, 722 (Alaska 2013) ("Appraisal follows an expedited timeline and is resolved by a panel of independent appraisers, while arbitration is a quasi-judicial proceeding that is governed by a much more detailed statutory scheme and includes formal evidentiary hearings with depositions and witness testimony."). It seems unlikely that either the Colorado legislature or the parties to the instant insurance contract could have intended such a transformation without expressly saying so.

**B. The Court Will Impose Guidelines to Govern the Appraisal Process**

The parties' briefs make clear that the parties cannot or will not agree on even basic ground rules to govern the appraisal process. And the rhetoric that counsel have employed in the briefs suggests that counsel are not helping the parties in this regard. *See, e.g.,* Resp. Br. at 10 [Doc. # 22] (noting that Auto-Owners "wants to turn this appraisal into a circus"); Reply Br. at 3 [Doc. # 23] (criticizing Summit Park's conduct as "somewhat disturbing[]"). I expect the parties and counsel to make better efforts to cooperate going forward. For the following reasons, I also believe it necessary to impose the guidelines set forth at the end of this order to govern the

appraisal process.

First, the appraisal process in the policy is mandatory when properly invoked, as here. The policy states that, upon a party's "written demand," each party "will" choose an appraiser, the appraisers "will" choose an umpire to whom they "will" submit any differences they have, and the umpire's decision "will" be binding. As the parties are deadlocked, a clear framework is necessary to effectuate these mandates. Second, the policy requires the appraisers to be "competent and impartial." The guidelines below regarding disclosures and *ex parte* communications will minimize the risk that the appraisal award will need to be vacated pursuant to this language. *See Colorado Hosp. Servs. Inc. v. Owners Ins. Co.*, No. 14-CV-001859-RBJ, 2015 WL 4245821, at *2-3 & n.3 (D. Colo. July 14, 2015) (vacating appraisal award "as a matter of contract interpretation" where policy required that appraisers be "competent and impartial" yet a "motive to develop a high appraisal [was] built into the fee schedule" of one of the appraisers). The guidelines are similar to those governing arbitrations under the CUAA and to those the Colorado Division of Insurance has adopted for certain appraisal proceedings. *See* Colo. Rev. Stat. § 13-22-212; Colo. Div. of Ins. Bulletin B-5.26 (#2), 2014 WL 6792685 (Dec. 3, 2014).

Third, the Colorado Supreme Court has recognized that certain protections, including the right to notice and a hearing, apply to appraisal proceedings. *See Providence Wash. Ins. Co. v. Gulinson,* 215 P. 154, 155 (Colo. 1923) (vacating appraisal award made by appraiser and umpire where other appraiser was not given notice of meeting at which award was made); *St. Paul Fire & Marine Ins. Co. v. Walsenburg Land & Dev. Co.,* 278 P. 602, 602-03 (Colo. 1929) (voiding appraisal where insured was denied right to "appear before the appraisers" and "be heard"). The

guidelines I impose will protect the integrity of the process and increase the likelihood of a valid appraisal award. Finally, the Court has the responsibility and the inherent power "to control and supervise its own proceedings." *See United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986). Imposing guidelines will allow the appraisal process to proceed in an orderly and efficient manner that conserves the Court's resources and minimizes the need for further involvement of the Court.

Courts regularly impose guidelines similar to those below to govern appraisal processes in insurance contracts. *See, e.g., Am. Storage Centers v. Safeco Ins. Co. of Am.*, 651 F. Supp. 2d 718, 720 (N.D. Ohio 2009) (noting the court's "lengthy Order which contained instructions for the conduct of the appraisal process"); *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F. Supp. 2d 259, 275 (D. Del. 2000) (ordering that "[t]he appraisers shall make determinations as to the following" and including a list of issues to be addressed, such as "the amount of loss to clean up and remove asbestos containing materials and/or asbestos fibers as a result of the fire"); *see also Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.,* 981 F. Supp. 581, 607 (N.D. Iowa 1997) (permitting parties to "move the court for a determination" in the event "intractable disputes arise over what issues are properly within the scope of appraisal").

In determining the guidelines to be imposed, I relied upon the foregoing authorities as well as Auto-Owners' proposed appraisal agreement and Summit Park's objections thereto. I briefly address those objections. First, I have not adopted Auto-Owners' requested provisions regarding witness lists, subpoenas, hearing testimony, and the like, as I agree with Summit Park that they would turn the appraisal process into a quasi-judicial proceeding, contrary to the purpose of the appraisal provision. Second, Summit Park has expressed concern about the

burden imposed by the disclosure requirements, given that its proposed appraiser has acted as an appraiser for other clients of Summit Park's counsel—a law firm that Summit Park states has represented thousands of policyholders over the course of some 30 years. In this regard, I emphasize that the below guidelines—like the CUAA—require only a "reasonable inquiry" with respect to conflicts of interest. I also note that "[t]he suggestion that retention of an expert on multiple engagements renders the expert other than impartial is a slippery slope." *Colorado Hosp. Servs. Inc.*, 2015 WL 4245821, at *2 n. 2. Finally, Summit Park objects to Auto-Owners' "extensive delineation" of items the appraisals should address, but I find most of them reasonable. *See* Doc. # 17 at 9 (noting that appraisals should "provide sufficient detail" and "make appropriate factual conclusions to enable the Court" to resolve the parties' disputed legal issues). I have not, however, required the appraisers to subtract "any applicable deductibles or payments previously made"—as Auto-Owners would—because doing so could require them to interpret the policy.

Accordingly, the following guidelines shall govern the appraisal process in this case:

1. The loss that is to be appraised is the physical damage to Summit Park's property allegedly caused by the hailstorm of September 14, 2013.
2. With respect to each separate building allegedly damaged by the September 14, 2013 hailstorm, the appraisal award shall set forth detailed factual findings regarding the amount of the loss. For each building, this shall include, but not necessarily be limited to, the following:
    a. The percentage of the loss caused by the September 14, 2013 hailstorm, specified using the range of 0% to 100%.

    b. The actual cash value (ACV) and replacement cost value (RCV) amount of the loss with respect to the separate elements or components of construction of each building, such as roofs, siding, windows, trim, paint, HVAC equipment, etc., and how the depreciation was calculated for each component. As necessary and appropriate, the amount of overhead and profit, if any, and the amount for any general conditions shall be separately specified.

    c. To the extent there was damage to the vinyl siding caused by the September 14, 2013 hailstorm, the appraisal award shall separately set forth: (i) the cost to repair or replace the damaged siding; and (ii) the cost of replacing undamaged property to achieve complete matching of the repair materials with the existing siding. It shall also set forth the cost of repairing or replacing the damaged siding in a reasonable manner that does not achieve matching of the repair materials with the existing siding.

3. In view of the different elements of construction allegedly damaged by the September 14, 2013 hailstorm (*e.g.*, roofs, vinyl siding, etc.), the parties may, but are not required to, select different appraisers with respect to different aspects of the loss. If a party selects only a single appraiser, such appraiser must be competent to address all aspects of the loss.

4. An individual who has a known, direct, and material interest in the outcome of the appraisal proceeding or a known, existing, and substantial relationship with a party may not serve as an appraiser. Each appraiser must, after making a reasonable inquiry, disclose to all parties and any other appraiser any known facts that a reasonable person would consider likely to affect his or her impartiality, including (a) a financial or personal interest in the outcome of the appraisal; and (b) a current or previous relationship with any of the parties (including their counsel or representatives) or with any of the participants in the appraisal proceeding,

including licensed public adjusters, witnesses, another appraiser, or the umpire. Each appraiser shall have a continuing obligation to disclose to the parties and to any other appraiser any facts that he or she learns after accepting appointment that a reasonable person would consider likely to affect his or her impartiality. If an appraiser discloses a fact required to be disclosed pursuant to this paragraph and a party files an objection in this Court to the appointment or continued services of the appraiser no later than 15 days after becoming aware of such fact (or from the date of this order, whichever comes later), the objection may be a ground for vacating an award made by the appraiser. The same objection procedure shall apply in the event a party becomes aware of information bearing on an appraiser's competency.

5. The standard for impartiality and disclosure obligations described in the preceding paragraph also apply to the umpire, except that the parties shall raise any objections regarding a proposed umpire's impartiality or competency through the procedure set forth in the policy. *See* Doc. # 6-1 at 78 ("The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction."). Objections regarding the impartiality or competency of an umpire who has already been selected shall be raised in the manner specified in the preceding paragraph.

6. Neither Auto-Owners nor Summit Park, nor any of their representatives, including public adjusters, shall have any *ex parte* communications with any appraiser or umpire regarding any substantive or material matter related to the loss to be appraised. The parties may communicate with their respective appraisers only regarding non-substantive matters, such as scheduling matters. If the appraisers and/or umpire meet at the property to inspect the

alleged damage, they shall not meet with or have any communications with any party or its representatives concerning any substantive or material matter unless the other party's representative or representatives are also present at such meeting. If any party intends to send a representative or representatives to such inspection or meeting, it shall provide the other party with at least 10 days advance notice, so that the other party can also send a representative or representatives.

7. If a party desires to present to the appraisers and/or umpire any written evidence or information related to the amount of loss allegedly caused by the September 14, 2013 hailstorm, a copy of any communication transmitting such written evidence or information must be contemporaneously sent to the other party. Written evidence or information includes, but is not limited to, estimates, photographs, bids, reports, product specifications, and weather data, whether stored or maintained in written or electronic form.

8. Unless the appraisers selected by the parties agree regarding the amount of loss caused by the September 14, 2013 hailstorm, so that an appraisal award can be made by the two appraisers without requiring the services of the umpire, before any appraisal award is made with respect to any aspect of the claim, the appraisers and umpire shall conduct an informal hearing. The hearing shall be conducted at a time and place mutually agreed to by the parties, the appraisers, and the umpire. The appraisers and umpire shall determine the format of the hearing and the rules, if any, governing the hearing.

9. The appraisers and umpire shall have no authority to decide legal issues, which are reserved for the Court.

10. The parties and their counsel shall ensure that the appraisers and umpire receive notice of

this order.  The parties and their counsel shall make every reasonable effort to ensure that the appraisal process proceeds in accordance with this order.

NOTICE IS GIVEN THAT, IF THE COURT FINDS THAT THE PARTIES AND/OR THEIR COUNSEL HAVE NOT COMPLIED WITH THIS ORDER, THE COURT WILL IMPOSE SANCTIONS AGAINST THE PARTIES AND/OR THEIR COUNSEL PURSUANT TO THE COURT'S INHERENT AUTHORITY.

### III.  Conclusion

Accordingly, Auto-Owners' motion [Doc. # 18] is **GRANTED IN PART AND DENIED IN PART**.  The appraisal process shall proceed as set forth above.

DATED: September  10 , 2015, at Denver, Colorado.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE